349 So.2d 370 (1977)
FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE
v.
NOVEM, INC.
No. 8270.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1977.
Rehearing Denied September 9, 1977.
*371 Bridgeman & Conway, James R. Conway, III, Metairie, for First Wis. Nat. Bank of Milwaukee and Pioneer Nat. Title Ins. Co., plaintiffs-appellants.
Mmahat, Gagliano, Duffy & Giordano, Nicholas J. Gagliano, Metairie, for Mark A. Oswald, d/b/a Interior Trim Co., appellant.
Gerald P. Webre, Metairie, for Reverend C. T. "Preacher" Walker, appellant.
Bernhardt C. Heebe, New Orleans, for Nu-Way Steel & Supply, Inc. appellee.
Hoppe, Kelly & Dupepe, Henry B. Hoppe, Jr., and Don J. Dupepe, Metairie, for C. J. Christina, Inc., Advanced Painting, Inc., and H. C. Seals, Jr., appellees.
Cronvich & Wambsgans, Richard M. Michalczyk, Metairie, for Gats, Inc., appellee.
Joseph N. Naccari, New Orleans, for Louis Jordano, Jr., d/b/a Jordano Const. Co., appellee.
Mmahat, Gagliano, Duffy & Giordano, Nicholas J. Gagliano, Metairie, Dodge, Friend, Wilson & Spedale, Joseph E. Friend, William J. Oberhelman, Jr., New Orleans, for Crane Supply Co., Inc.; Cancienne Const. Co., Inc.; Mark A. Oswald, d/b/a Interior Trim Co., Tulane Hardwood Lumber Co., Inc. and Hill-Behan Lumber Co., appellees.
Sidney D. Torres, III, and George N. Bischof, Jr., Chalmette, for Custom Painting Contractors, Inc., and C. J. Kerner, d/b/a Kerner Builders, appellees.
Harold E. Kytle, Kenner, for Rite-Way Plumbing, Inc., appellee.
Jospeh S. Russo, Jefferson, for Dowdy Bros. Concrete Co., Inc., intervenor-appellee.
Before REDMANN, STOULIG and MORIAL, JJ.
STOULIG, Judge.
This appeal involves the ranking of claims by creditors of Novem, Inc. (Novem), a corporation that failed in an attempt to complete construction of a motel. The building contract was not recorded.
This litigation began on December 2, 1974 when the First Wisconsin National Bank of Milwaukee (bank) filed a petition to foreclose via executiva on a mortgage it held on property at 2731 Causeway Boulevard, Metairie, for Novem's failure to pay the amounts due on a $1,850,000 note. At this *372 time construction on the partially completed motel was at a standstill because Novem could not obtain funding to complete the job. Meanwhile, numerous liens had been filed against the property on behalf of unpaid laborers and/or materialmen for services rendered or materials used in the partial construction. Because the lienholders claimed a preference over the mortgage creditor, the bank and its mortgage insurer, Pioneer National Title Insurance Company, filed several rules to rank privileges with the object of having its mortgage adjudicated as priming the liens of the numerous creditors cited.
From a judgment giving priority to the lienholders whose affidavits were filed long after recordation of the mortgage, the bank and its title company have appealed. Although several lienholders also appealed, they are not before us because their appeals were either dismissed as untimely or voluntarily because of compromise. By answer to the appeal, the demand for an increased judgment by Dowdy Bros. Concrete Co., Inc., is before us.
Appellants claim the priority of the mortgage on either of two theories: (1) that it was recorded before any work was done or material delivered to the building site; and/or (2) appellees failed to file their respective lien affidavits within 60 days of the last work performed on the motel.
In this case the ranking of competing claims is governed by that section of the Private Works Act dealing with unrecorded building contracts, R.S. 9:4812, et seq. We quote the portion of that statute relevant to the issues before us:
"When the owner * * * undertakes * * * construction * * * for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. The said claim, recorded as aforesaid, shall preserve a privilege against the property for a period of one year from the date of its recordation, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such cause of action shall prescribe within one year from the date of the recordation of the claim in the mortgage records of the office of the clerk of court or the office of the recorder of mortgages. * *
* * * * * *

"The said privilege shall be superior to all other claims against the land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if the vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. * * *" (Emphasis added.)
A pivotal issue is whether the mortgage was recorded before any construction was begun or any materials furnished. R.S. 9:4819(A)(1) sets the criteria by which this determination may be made. We quote:

*373 "(A) The phrase, `before the work or labor is begun or any material is furnished', as used in R.S. 9:4801-9:4817, both inclusive, shall be defined as follows:
(1) In the event that the work or construction is new, then `work or labor is begun or material is furnished' is defined as having begun when either excavation has been started so that it can be observed on inspection, or material has been furnished and delivered to the job site which is visible upon inspection and which material when delivered had a value in excess of one hundred dollars provided, however, that test piling shall be excluded from this definition."
The trial judge found as a fact, and the record amply supports his findings, that the mortgage was not filed in time to prime the claim of the various lienholders because the following activities had taken place on the jobsite before the mortgage was recorded on December 13, 1972: (1) the jobsite had been cleared by a bulldozer at a cost of $300; (2) two portable construction shacks were placed on Novem's land; the corners of the building were staked as a guide to driving of test piles; (4) 18 pilings, valued at $16 each, were delivered to the jobsite, of which 15 were used in the structure itself and were not test pilings; and (5) wooden stakes valued at $500 were stored in one of the construction buildings. These activities constituted a construction beginning and a material delivery sufficient to give the lienholders priority over the mortgage creditor, whose security device was not recorded in sufficient time to give it the superior ranking afforded mortgagees by R.S. 9:4812.
The next issue raised by the bank is timeliness of filing the various liens. Briefly, construction was closed down on July 10, 1974. Novem continued in its efforts to secure financing to complete the motel and in the latter part of September 1974, had a fence constructed around the premises to discourage vandalism. On December 2, 1974, the foreclosure was filed and it is from this date that the trial court determined the 60-day period began to run within which laborers and materialmen could file liens.
Of the 13 lienholders now before this court as appellees (the balance of the claims have been compromised), appellants' second argument is not applicable because the liens were filed within 60 days of the last day appellants contend the job was abandoned by Novem, namely July 10, 1974. We note the creditors; the dates the liens were recorded that clearly brought them within the timely filing period of R.S. 9:4812 no matter whose computations are used; and the amount the judgment of the trial court recognized as due them:[1]
1. Gats, Inc., August 12, 1974, $994.35.
2. Rev. C. T. "Preacher" Walker, July 3, 1974, $726.80 plus $3.75 costs.[2]
3. Hill-Behan Lumber Co., September 6, 1974, $4,805.13.
4. R. J. Marchand & Co., Inc., August 22, 1974, $5,547.24.
5. Loy E. Ernest and John J. Orfanos, d/b/a Ernst & Orfanos, August 15, 1974, $3,752.
6. R. A. Louviere, Sr., August 26, 1974, $3,047.40 plus $3.75 costs.
7. Advanced Painting Company, June 7, 1974, $8,000.
8. Dowdy Brothers Concrete Company, Inc., August 8, 1974 $7,780.52.
9. Tulane Hardwood Lumber Co., Inc., August 12, 1974, $19,537.49.
10. Rite-Way Plumbing, Inc., April 22, 1974, $30,100.88.
11. H. C. Seals, Jr., August 1974, $1,215.20.
There remains two lienholders to whom the argument of timeliness of recordation might be applied were the bank's position *374 on the date of abandonment meritorious, that is, that the 60-day filing period began to run on July 11, 1974 (the day following the last physical construction activity on the property). These are Rodney Coco, Inc., whose lien was filed December 18, 1974 and C. J. Christina, Inc., whose lien was filed October 31, 1974. Both were filed timely.
In this case the time began to run only when it became apparent that the owner could not complete the job and had abandoned it. This did not become evident until December 2, 1974 when the bank initiated foreclosure proceedings. Until that time, Novem attempted to obtain more financing to finish the project that was stopped when it was nearly completed.
Before an abandonment date can be fixed on an incomplete construction project, there should be some outward manifestation of the owner's intent to give up the project. In Singer Lumber Co. v. King, 45 So.2d 567 (La.App.Orl.1950), the court discussed this problem and its resolution is apposite here. We quote:
"We are, however, not concerned with the question of when to commence the sixty-day period when the work is completed. Our problem is when to commence the sixty-day period when the work is never completed and the job is abandoned. The District Judge decided that even if it should be properly held that where there is an actual abandonment and the owner decides not to have the work continued, the sixty-day period commences at the time the owner so decides, nevertheless the lien filed by the plaintiff here was not filed too late because long after the discontinuance of the actual work on the project and, in fact, until well within the period of sixty days before the lien was filed, the owners had not abandoned the project and were still hoping to be able to have the contractor recommence operations.
"We are not at all certain as to when the sixty-day period should commence when there is an actual definite abandonment of the job. We find it difficult to persuade ourselves that in such a case the beginning of the sixty-day period may be fixed by any mental determination of the owner. The statute, as interpreted by the Supreme Court, declares that where there is a contract, the materialmen and the laborers and others shall have sixty days from the acceptance of the work within which to file their liens, and that where there is no contract, they shall have sixty days from the completion of the work. A prospective lienor, therefore, need only watch the job to see when the work is completed since he knows that after it is completed he will still have sixty days within which to record his lien. So long as it is not completed, he knows that he still has ample time. How can he determine when the owner has agreed to an abandonment? How can he know that the time for the filing of his lien is running out? He will see that the work, in its incomplete state, is still unfinished and yet when he records his claim he will be told that more than sixty days before that the owner decided that he would go no further with the work and that, therefore, he has lost his lien.
"Still if we assume that such result may be accomplished by the mere mental determination of the owner that the work is abandoned, we must nevertheless agree with our brother of the District Court that at the time this lien was filed there had not expired sixty days from the time at which the defendants still hoped to be able to persuade the contractor to proceed with the work. * * *" 45 So.2d at 570.
Therefore, we conclude the liens of the appellees were timely recorded and were properly given higher priority than appellants' mortgage.
We note appellants are attempting to argue the proceeding below simply was for the purpose of ranking creditors and not for judicially recognizing the dollar amount to which each lienor is entitled. We disagree. This course would require a multiplicity of trials and appeals were we to first rank the creditor by name and remand for a second *375 trial to set the amount of money due to each. We further note appellant abandoned this issue by not raising it as a specification of error in brief.
Finally, we consider the request by Dowdy Bros. Concrete Co., Inc., that we revise the judgment recognizing it as a lien creditor for $7,780.52 to include interest and attorney fees. This appellee claims interest at the rate of 1.5% per month on the unpaid balance plus 20% attorney fees based on this printed caveat on each bill of lading presented at the jobsite when the material was delivered:
"Purchaser hereby agrees to pay 1½ interest per month plus all legal costs involved in the collection of this bill"
On the same dray receipt this contradictory provision appears:
"Purchaser hereby agrees to pay 8% per month plus all legal costs involved in the collection of this bill"
Dowdy Brothers has not asserted that any authorized agent of Novem, Inc., ever agreed to one or the other of the conflicting conditions, either before the material was initially ordered or at any point when the material was being delivered. The bills of lading, shipping tickets that accompanied the material when it was delivered, are signed by various individuals at the jobsite who accepted the material. None have been identified. Because appellee relies on the bill of lading to establish the alleged interest and fee agreement, we assume there was no discussion of this item when the parties contracted for the sale of cement.
Absent consent, there is no contract. C.C. art. 1800. In this case we are presumably dealing with an alleged modification of the initial agreement during the course of performance or delivery of the material. In theory the silence of Novem, Inc., in accepting material accompanied by a dray receipt stipulating interest for late payment and legal costs to collect, might constitute an implied acceptance of the condition. But the record before us does not contain sufficient proof to establish a modification of the terms by implied consent. In Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970), the Supreme Court stated the party claiming the modification in such cases must prove it as follows:
"While assent to a contract may be implied, that implication must be established and cannot be presumed. Defendant's burden was to establish a lease for a fixed term. He had to prove a meeting of the minds of the contracting parties that their relationship as lessor and lessee was for the alleged fixed term, by either express language or by circumstances (action or inaction) that necessarily implied the proposition. The facts and circumstances of the instant case establish only the existence of a lease by the month between the parties because of the reconduction of the written lease." 235 So.2d at 577.
For the reasons assigned, the judgment is affirmed. Appellants are to pay all costs of this appeal.
AFFIRMED.
REDMANN, J., dissents with written reasons.
REDMANN, Judge, dissenting in part.
I concur that the presence of 18 pilings worth $16 each included, within R.S. 9:4819(A)(1), "material . . . delivered to the job site which is visible upon inspection and . . . had a value in excess of" $100.[1] (Only three of the 18 were for *376 test piling, which is "excluded from this definition".)
Under § 4812, the general rule is that a building contract "privilege shall be superior to all other claims . . . ." A mortgagee can outrank a privilege claimant only by bringing himself within the exception to that general rule and therefore has the burden of proving that his mortgage "has been duly recorded before the work or labor is begun or any material furnished." Hortman-Salmen Co. v. White, 1929, 168 La. 1067, 123 So. 715. It is therefore the mortgagee's burden to establish that the pilings were delivered after recordation on December 13, 1972. (The recorded affidavit method of § 4819(A)(3) was not used.)
The evidence leaves the matter quite doubtful, and therefore the mortgagee has failed to carry its burden of proof. The mortgagee makes a plausible argument, based on other testimony of the pile-driver's business practice and of the owner's determination of the date for the test driving, that the order for the piles was not given until December 15 (the superscribed order form may be dated 12, 13 or 15), but that date is inconsistent with the seeming presence of the pilings in a December 14 photograph. The pile driver testified that he got the order on December 12 and delivered the piles by the next morning. We cannot say the trial judge erred in holding the mortgagee's proof insufficient to show delivery after the mortgage was recorded.
Ranking of the mortgagee as inferior to privilege claimants is therefore correct as to the 11 claims recorded within 60 days of July 10, 1974, the last day on which any labor was done or material furnished for the building.
I dissent from recognizing a privilege for two claimants who recorded more than 60 days after July 10. Singer Lbr. Co. v. King, La.App.Orl. 1950, 45 So.2d 567, and R. F. Mestayer Lbr. Co. Inc. v. Tessner, La.App. Orl. 1958, 101 So.2d 238, should (with en banc approval) be overruled.
Singer misread both the statute and National Homestead Ass'n v. Graham, 1933, 176 La. 1062, 147 So. 348, upon which it purported to rely. National's prime concern was one of statutory construction involving claimants who had recorded liens within 60 days of the last supply of labor or material by others, but more than 60 days after the last supply by the claimants themselves. National construed § 4812 (by pari materia construction, C.C. 17, with § 4802's 30 days from "notice of acceptance") to provide one 60-day period for all claimants, irrespective of when the claim arose, to run from (the later of) "the last delivery of all material . . . or the last performance of all services or labor". In effect, National interpreted the statute's clause "by said furnisher of material or said laborer" to modify "if done" rather than "the last delivery of all material . . . or the last performance of all services or labor".[2]
In the course of its pari materia comparison of § 4802's lien-inscription period running from "notice of acceptance" (in the case of a timely-recorded building contract), the court noted the analogy between "acceptance" and "completion", yet expressly related "completion" to the statutory last-labor-or-material scheme: "The work is completed when the last material is furnished and the last labor is performed."[3] 147 So. at 352.
But National is not a case in which the building had been completed. National is a case of an incompleted building. The chronologically last claimant, however, *377 . . . says that he stayed on the work until October, 1930, and as to that he is not contradicted. Our conclusion is that the structure was never finally completed. . ., but that up to October, 1930, [the owner] hoped to complete it, and made efforts to do so.
Hope of being able to do so seems to have been abandoned about October 1, 1930, and Neville filed his claim on November 5. [147 So. at 353; emphasis added.]
Thus National, whether speaking decidend of abandonment or obiter of completion, ties the beginning of the lien-filing period precisely to the last-material-or-labor rule of the statute.
Singer somehow missed the identity between the statute's last-labor-or-material and National's abandonment, and concluded that the statute no longer controlled. That conclusion is insupportable because of the strict interpretation necessarily placed upon statutes granting privileges (that is, statutes granting to one creditor the right to be paid before others, thus not only escaping the pro-rata rule of C.C. 3183 himself, but, worse, taking away from other creditors the amount that would otherwise have been available to pay them, at least pro-rata). C.C. 3185 speaks out of elemental fairness: "Privilege can be claimed only for those debts to which it is expressly granted [by law]."
Under the law, recordation only "creates" a privilege in favor of those labor or material claimants who record within 60 days of "the last delivery of all material . . . or the last furnishing of services or the last performance of labor . . . ." In the case of non-completion of a not-timely-recorded contract[4] (governed by § 4812), "abandonment" cannot mark the beginning of that 60-day period unless it be the abandonment (just like National's) that occurs when the last material and labor have been supplied. In that sense, abandonment here occurred July 10.
Singer felt, perhaps, the natural and reasonable urge to protect the lien claimant who, after all, was powerless to record or not record the general contract, to which he was not a party. Why, indeed, should the position of the laborer or materialman be worse because of non-recordation (or non-existence) of a contract that was not his doing? These very considerations, however, have been acted upon by the legislature, whose solution was to provide 60 days for liens to be filed in the case of no timely-recorded contract, § 4812. The legislature provides 30 days more than in the case of a timely-recorded contract, § 4802. The legislature has rationally legislated, and we have, and Singer had, no basis to ignore its limitation on its grant of privilege.
Claimants Coco and Christina did not record their claims within the time period allowed by the statute which alone creates privilege, and they therefore do not have privileges. The contrary judgment by the trial court should be reversed.
Finally, I also agree with the rejection of Dowdy Bros.' claim for interest and attorney's fees.
NOTES
[1] Plaintiff did not appeal either the ranking or the amount of the judgment in favor of Custom Painting Contractors, Inc., for $481.89. Lienor's appeal to increase the amount of the award was dismissed by this court on February 28, 1977, for its failure to timely perfect the appeal.
[2] Walker's appeal to increase the amount of his award was dismissed by this court on February 28, 1977 because of his failure to timely perfect it.
[1] I doubt the majority's four other alternate ratios for ranking the timely lien claimants above the mortgagee:

"Clearing" the site is not "excavation", which is the statute's word for the only work or labor (without materials) that alters the mortgagee's rank (by application of § 4819(A)(1) to § 4812).
Portable construction shacks are not "material" used in the building-project.
Stakes placed to mark the corners of the building so that test piles may be properly located are not "material" for the building (nor is it work or labor, since not excavation).
Wooden stobs or stakes stored in a construction shack are not "visible upon inspection" of the job site.
[2] National's statute would thus read: "Any person furnishing . . . material or . . . labor may record . . . his claim . . ., which recordation, if done [here inserting "by said furnisher of material or laborer"] within sixty days after the date of the last delivery of all material . . . or the last performance of all services or labor . . ., [here omitting "by said furnisher of material or laborer"] shall create a lien and privilege . . . ."
[3] Not pertinent to our consideration are the subsequent jurisprudence that corrective measures do not start the 60-day period anew and the 1966 amendment to § 4812 authorizing recording an affidavit of completion from which the 60 days run.
[4] Whether there is no timely-recorded contract because (1) recordation is late or (2) non-existent, or because (3) the contract is not written or because (4) there is no general contract, all such cases are governed by § 4812.