381 So.2d 578 (1980)
JONESBORO STATE BANK, Plaintiff-Appellee,
v.
Lewis F. TUCKER and Mary A. Tucker, Defendants,
Stephenson's Lumber, Inc., Intervenor-Appellant.
No. 14071.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
*579 Walker, Holstead & Smith by R. Wayne Smith, Ruston, for intervenor-appellant.
Baker, Culpepper & Brunson by J. M. McDonald, Jonesboro, for plaintiff-appellee.
Before HALL, JONES and McCLENDON, JJ.
McCLENDON, Judge.
Stephenson Lumber Company, Inc., as intervenor, appealed an adverse ruling on its claim that its material lien was valid and superior to the plaintiff's mortgage. The intervention followed foreclosure by plaintiff, a default judgment, seizure of defendants' property under fieri facias, and public sale by the sheriff.
We affirm the trial court's ruling as set forth in his short, comprehensive opinion.
There is no real dispute about the facts. Defendants undertook remodeling of their home in Jonesboro, Louisiana, in 1977. Mr. Tucker supervised the work of a carpenter. No contractor was involved and no contract was recorded.
Material was furnished to the job by intervenor of Ruston, Louisiana, beginning July 26, 1977. The last material was delivered on or about October 26, 1977.
Plaintiff's mortgage was recorded on September 7, 1977, well after the first materials were delivered to the job.
Due to a lack of funds all work on the project ceased in April of 1978.
Plaintiff filed its foreclosure suit on August 29, 1978. Intervenor filed its lien on August 31, 1978.
The intervention, filed after the sheriff's sale of defendants' property, sought to have Stephenson's lien for $1,892.08 (undisputed as to amount) recognized as superior to plaintiff's mortgage and to be paid by preference from the proceeds of the foreclosure sale. No other liens were involved.
The trial court found that from all the evidence it should have been reasonably apparent that the project had been abandoned in April 1978 and that intervenor's failure under the circumstances to investigate and file its lien within 60 days thereafter resulted in the lien not being timely filed.
Evidence taken at the hearing held in this matter consisted solely of the testimony of Mr. S. H. Stephenson on behalf of intervenor, identifying invoices representing materials delivered to defendants' job by his company, and cross-examination of Mr. Louis Tucker, defendant owner of the property involved.
Counsel for intervenor-appellant argues that the testimony of Mr. Tucker that he continued to seek funds with which to complete this remodeling work down to the date the foreclosure suit was filed by plaintiff bank is sufficient to establish that there was no intent to abandon and the project was not in fact abandoned until that date, August 29, 1978; therefore, the lien filed two days later was timely.
*580 First it should be noted that La.R.S. 9:4812 establishing the privilege in favor of laborers and material furnishers in connection with private works where no contract is recorded makes no specific provision for "abandoned" construction. It speaks of and contemplates completed work. If an affidavit of completion is filed, the 60 day lien filing period begins with the date of that affidavit. If no affidavit of completion is filed, 60 days are granted from the date of the last delivery of all material or the last furnishing of services or the last performance of labor upon the property.
From this it should follow that work not completed (abandoned) would fall into the second category, i. e., where no affidavit of completion is filed, and require a lienor to file within 60 days after the last material, services or labor were furnished on the job.
One of the earlier Louisiana Supreme Court decisions considering the question of the beginning date for the filing of such liens, National Homestead Ass'n v. Graham, 176 La. 1062, 147 So. 348 (1933), is believed to support this position. This case involved a large apartment complex. The owner, Graham, employed an architect, Neville, to supervise construction. Neville filed a lien on November 5, 1930. In determining whether this lien was timely filed the court found from the uncontradicted testimony of the architect himself that because of money problems the work had slowed early in 1930, after which time the owner lost hope of finding sufficient funds. The conclusion that the work was abandoned on October 1, 1930, and the lien was timely filed was, in our opinion, based upon the fact that that was when the last services were performed (those of Neville), rather than the fact that Graham "lost hope" of getting further funds.
Appellant cited two cases in support of the proposition that "abandonment" requires proof of two essential elements: (1) an intent to abandon; and (2) an act of abandonment, but they really have no application here since they involve abandonment either of leased property (Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3rd Cir. 1974), or of improvements on leased property (Powell v. Cox, 92 So.2d 739 (La.App. 2d Cir. 1957).
Two other cases cited by appellant in support of his contention that Mr. Tucker's "intent" fixed the date of abandonment are: Singer Lumber Co. v. King, 45 So.2d 567 (La.App.Orl.1950); First Wisconsin National Bank of Milwaukee v. Novem, Inc., 349 So.2d 370 (La.App. 4th Cir. 1977).
We first disagree that in the earlier Singer case Judge Janvier, as organ of the court, actually held that the abandonment date can be determined by "any mental determination of the owner." On the contrary, the court there pointed out the dilemma of a prospective lienor if this was the sole basis for fixing the point of abandonment for the purpose of beginning the 60-day lien period as disclosed by the following quoted portion of that opinion:
We are not at all certain as to when the sixty-day period should commence when there is an actual definite abandonment of the job. We find it difficult to persuade ourselves that in such a case the beginning of the sixty-day period may be fixed by any mental determination of the owner. The statute, as interpreted by the Supreme Court, declares that where there is a contract, the materialmen and the laborers and others shall have sixty days from the acceptance of the work within which to file their liens, and that where there is no contract, they shall have sixty days from the completion of the work. A prospective lienor, therefore, need only watch the job to see when the work is completed since he knows that after it is completed he will still have sixty days within which to record his lien. So long as it is not completed, he knows that he still has ample time. How can he determine when the owner has agreed to an abandonment? How can he know that the time for the filing of his lien is running out? He will see that the work, in its incomplete state, is still unfinished and yet when he records his claim he will be told that more than *581 sixty days before that the owner decided that he would go no further with the work and that, therefore, he has lost his lien.
Still if we assume that such result may be accomplished by the mere mental determination of the owner that the work is abandoned, we must nevertheless agree with our brother of the District Court that at the time this lien was filed there had not expired sixty days from the time at which the defendants still hoped to be able to persuade the contractor to proceed with the work. We agree with the District Judge that the evidence of the defendants themselves shows that they had not given up hope and had not abandoned the project until well within the period of sixty-days prior to the filing of the lien. (Emphasis ours)
In the Singer case the sole contest was between the lien claimant and the owners. The contractor had quit and could not be found, but defendants, Mr. and Mrs. Kruger, obviously by their own testimony admitted they were still looking for the contractor and had no intention of abandoning the project if they could find him. Under these circumstances in this particular case, the court found the project had not been abandoned. The testimony of the defendants actually amounted to an admission against interest.
The First Wisconsin National case involved a million and a half dollar foreclosure suit of a motel project where the trial court found that construction was closed down on July 10, 1974. The appeal involved thirteen lien holders, eleven of which were not at issue, because all eleven were filed within sixty days after July 10, 1974. One of the other two liens was filed October 31, 1974 and the other on December 18, 1974. The court found both these to have been timely filed for the reason that it did not become apparent that the owner (Novem, Inc.) could not complete the job and had abandoned it until the foreclosure suit was filed on December 2, 1974. In so ruling the court stated: "Until that time, Novem attempted to obtain more financing to finish the project that was stopped when it was nearly completed", without giving any indication of the type evidence upon which it based this conclusion.
Then the court made the following statement: "Before an abandonment date can be fixed on an incomplete construction project, there should be some outward manifestation of the owner's intent to give up the project," followed by a lengthy quotation from Singer, supra, as being an appropriate resolution of this problem. Interestingly, the quote omits the last line and what appears to be the real decision in Singer limited to the particular facts of that case. (See emphasized portion of our above quote from Singer.)
We are unable to determine from the record what the court in First Wisconsin National found the "outward manifestation of the owner's intent" to give up the project was in that case.
We are convinced that the subjective, uncommunicated intent of the owner in such cases should not be the determining factor in fixing the date of abandonment of a construction project.
We believe that the better approach to this problem is one that treats any unexplained and complete cessation of all work on any construction project in itself as a manifestation of intent on the owner's part to abandon the project sufficient to put any furnisher of material or laborer on notice that the sixty days granted him for filing his lien may well have begun and he would permit sixty days to run from that date without filing his lien at his own peril. We think this is more in keeping with the requirement of R.S. 9:4812 and the holding of National Homestead Ass'n v. Graham, supra, as well as the strict construction rule applicable to all lien statutes. Federal National Bank & Trust Co. of Shawnee v. Calsim, Inc., 340 So.2d 611 (La.App. 4th Cir. 1976), writ denied La., 342 So.2d 1110, 1111.
This is particularly so since the burden of proving the timely filing of his lien is on the materialman or laborer. Jeffer's Trust v. Justice, 253 So.2d 234 (La.App. 4th Cir. 1971).
*582 For these reasons judgment of the trial court is affirmed at appellant's cost.