FORET, Judge.
Evangeline Brokerage Co., Inc. (Evangeline) filed a motion to rank mortgages, liens, and privileges, naming two mortgage holders, Associates Financial Services of America, Inc. (Associates), and Freelander, Inc. — The Mortgage People (Freelander) as defendants. After hearing the evidence, the trial court held that the mortgages held by Associates and Freelander were superi- or in rank to the materialman’s lien filed by Evangeline, and Evangeline has appealed.[1]
FACTS
Beginning in September of 1984 and ending December 11, 1984, Evangeline sold and delivered materials to Mr. and Mrs. James A. Lewis for the construction of a home located in the town of Sunset. In December of 1984, finances were running short, and construction on the home ceased on the 18th or 19th of December, 1984, according to the testimony of one of the carpenters, Lloyd Duplechain. Duplechain states that he was the last worker to leave the job, and he did so, at the latest, on the 18th or 19th of December. Thereafter, the Lewises failed to pay for materials sold by Evangeline and accordingly, Evangeline filed a materialman’s lien in the records of St. Landry Parish on February 19, 1985. Subsequent thereto, Evangeline obtained a personal judgment against the Lewises, with said judgment also recognizing and maintaining the materialman’s lien filed by Evangeline.[2] Associates recorded a mortgage on the Lewis property on November 29,1984, and thereafter, Freelander recorded its mortgage on January 28, 1985.
We are asked, on appeal, to determine whether or not the trial court erred in finding that the materialman’s lien filed by Evangeline was not timely and therefore the mortgages held by Freelander and Associates. are superior in ranking. It is clear *1313 that, in accordance with La.R.S. 9:4821[3], the materialman’s lien filed by Evangeline will prime the mortgages held by Associates and Freelander, provided it is timely filed.
We should note at the outset that there was no general contractor involved on this job. Lloyd Duplechain, the carpenter who testified at trial, referred to himself as the general contractor, but it is clear that he did not meet the statutory definition of same, provided at La.R.S. 9:4807. Accordingly, the applicable provision of the Private Works Act with regard to the lien period is La.R.S. 9:4822(C):
“C. Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim and privilege under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:
(1) The filing of a notice of termination of the work; or
(2) The substantial completion or abandonment of the work, if a notice of termination is not filed.”
In the instant case, there is no record of a notice of termination having been filed and it is clear that the project had not reached substantial completion when Duplechain left the job on December 18 or 19 of 1984[4]. Therefore, we must decide whether or not the trial court erred in finding that the lien in question was filed more than sixty days after the project had been abandoned by the owner. La.R.S. 9:4822(1) states:
“I. A work is abandoned by the owner if he terminates the work and notifies persons engaged in its performance that he no longer desires to continue it or he otherwise objectively and in good faith manifests the abandonment or discontinuance of the project.”
We are unable to find any jurisprudence interpreting the words “abandonment” or “discontinuance” as used in R.S. 9:4822(1), nor are we able to find any jurisprudence applying La.R.S. 9:4822(C) in a situation where the project is abandoned or discontinued. Prior thereto, La.R.S. 9:4812 provided that the applicable lien period (for materialmen where no general contractor is involved and no affidavit of completion is filed) was sixty days “after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer ...” Because R.S. 9:4812 did not make reference to a situation where the project is abandoned by the owner, the courts of our State attempted to fashion some sort of workable rule to be applied in such instance. While the cases, for the most part, agree that abandonment should trigger the sixty-day lien period, the jurisprudence differed as to the meaning to be assigned to the term “abandonment.” In any event, we find these *1314 cases most helpful in determining what constitutes “abandonment” within the scope and meaning of La.R.S. 9:4822(C) and 9:4822(1). One of the first jurisprudential rules to develop in this area was the so-called “hope of completion” test. According to this rule, the sixty-day lien period did not begin, and the project was not considered as abandoned, until such time as the owner manifested an intent to abandon the project. See, Stanley v. Falgoust, 398 So.2d 1240 (La.App. 4 Cir.1981); First Wis. Nat. Bank of Milwaukee v. Novem, Inc., 349 So.2d 370 (La.App. 4 Cir.1977); Louisiana Brick & Tile Corp. v. Browning, 343 So.2d 311 (La.App. 2 Cir.1977). The determination of the abandonment date pursuant to this test proved to be oftentimes difficult to determine. Moreover, the courts became increasingly concerned about the existence of indefinitely lingering time periods within which to file liens resulting from the application of this test in situations where the owner discontinues the project but manifests no intent to abandon. For example, under this test, if the owner stopped work on a project but manifested no intent to abandon, the material-man (who supplied material prior to discontinuance) would be granted an open-ended lien period because the delay for filing would not begin until such time as the owner manifested his intent to abandon the project. Thus, the courts began to seek ways to alleviate this unfavorable situation. Accordingly, in Clegg Concrete, Inc. v. Kel-Bar, Inc., 393 So.2d 178 (La.App. 1 Cir.1980), writ denied, 398 So.2d 631 (La.1981), the court, after considering the pertinent jurisprudence, rejected the “hope of completion” test in favor of the so-called “same contract test.” Specifically, the court held that materialmen and laborers under one contract or general contractor have sixty days from the date such general contractor discontinues work on the project, in which to file their respective liens, notwithstanding the fact that the owner, at a later date, resumes work on the project with a different contractor. The court further held that this same analogy should apply where the job is self-contracted by the owner. This, the court felt, would alleviate the sometimes harsh consequences resulting from lingering delays created by the “hope of completion” test. Similarly, in Jonesboro State Bank v. Tucker, 381 So.2d 578 (La.App. 2 Cir.1980), the court adopted another approach to the problem, one which we feel provides for more equitable results. In that case, the court stated, at 581, the following:
“We believe that the better approach to this problem is one that treats any unexplained and complete cessation of all work on any construction project in itself as a manifestation of intent on the owner’s part to abandon the project sufficient to put any furnisher of material or laborer on notice that the sixty days granted him for filing his lien may well have begun and he would permit sixty days to run from that date without filing his lien at his own peril. We think this is more in keeping with the requirement of R.S. 9:4812 and the holding of National Homestead Ass’n v. Graham, [176 La. 1062, 147 So. 348 (1933)], supra, as well as the strict construction rule applicable to all lien statutes. Federal National Bank & Trust Co. of Shawnee v. Calsim, Inc., 340 So.2d 611 (La.App. 4th Cir.1976), writ denied La. [(1977)] 342 So.2d 1110, 1111.”
Applying this rationale to the instant case, Lloyd Duplechain, the carpenter on the job, testified that he last worked on the house on the 18th or 19th of December, 1984. He further stated that he was the last worker to leave the project and that therefore, all work activity ceased on the project as of that time. Duplechain further testified that work on the home resumed, with a different carpenter, in the latter part of January, 1985. Considering this, and in accordance with Jonesboro State Bank v. Tucker, supra, we find that the project was abandoned or discontinued, within the scope and meaning of La.R.S. 9:4822(C) and 9:4822(1), on December 18 or 19, 1984, at the very latest. Accordingly, under the clear wording of R.S. 9:4822(C), Evangeline *1315 had sixty days from such date to file its materialman’s lien. As noted earlier, Evangeline did not file its lien until February 19, 1985, and thus, the lien was not timely filed. Considering this, we agree with the trial court that the mortgages held by Associates and Freelander are superior in rank to the materialman’s lien held by Evangeline.
In view of the above and foregoing, the judgment of the trial court is affirmed, and all costs of this appeal are assessed to plaintiff-appellant, Evangeline Brokerage Co., Inc.
AFFIRMED.

. James A. Lewis and Joyce Guilbeau Lewis, the owners of the property affected by the mortgages and liens mentioned herein, are not parties to this appeal, nor were they named as defendants in the motion to rank mortgages, liens and privileges filed by Evangeline.

. Evangeline and Associates were not parties to the proceeding in which the judgment was obtained by Evangeline against Mr. and Mrs. Lewis. The issue as to whether or not this judgment may be collaterally attacked by Freelander and/or Associates and/or whether or not the judgment is res judicata as to Freelander and Associates, is not presented for our consideration on appeal.

. La.R.S. 9:4821 is as follows:
"§ 4821. Ranking of privileges
The privileges granted by R.S. 9:4801 and R.S. 9:4802 rank among themselves and as to other mortgages and privileges in the following order of priority:
(1) Privileges for ad valorem taxes or local assessments for public improvements against the property are first in rank.
(2) Privileges granted by R.S. 9:4801(2) and R.S. 9:4802(A)(2) rank next and equally with each other.
(3) Bona fide mortgages or vendor’s privileges that are effective as to third persons before the privileges granted by this Part are effective rank next and in accordance with their respective rank as to each other.
(4) Privileges granted by R.S. 9:4801(3), R.S. 9:4801(4) and by R.S. 9:4802(A)(1), R.S. 9:4802(A)(3), and R.S. 9:4802(A)(4) rank next and equally with each other.
(5) Privileges granted by R.S. 9:4801(1) and R.S. 9:4801(5) rank next and equally with each other.
(6) Other mortgages or privileges rank next and in accordance with their respective rank as to each other.”

. The testimony at trial established that, at the time Duplechain left the project, the electrical work was 50-60% complete and some of the plumbing work had not been finished. Additionally, the air conditioning system was not completed and the kitchen cabinets had not been installed.