CHEHARDY, Judge.
Bernard Lumber Company, Inc. (Bernard), appeals a trial court decision on a rule to rank encumbrances which ordered that a materialman lien in the sum of $2,230.82 filed in favor of Bernard on February 20,1980 be cancelled and erased from the mortgage records of the Clerk of Court for the Parish of Jefferson, State of Louisiana. The judgment further decreed that the lien had been filed after the expiration of the 60-day period for timely filing of liens as provided by LSA-R.S. 9:4812. As part of its judgment, the district court also made a finding of fact that construction on the subject building had been abandoned on or about August 15, 1979.
This case involves a home which was being constructed by defendants, Sheron Lynne Cambias, wife of and Mark 0. Fal-goust, upon Lot 20, Square 4, Chateau Estates North, Section 1, in Kenner, Louisiana, for their personal residence. Plaintiffs, Beverly H. Stanley, wife of and Thomas L. Stanley, Jr., filed a petition for executory process on February 11, 1980, foreclosing on a $50,000 mortgage which they held on the property and asking the court to issue a writ of seizure and sale; and subsequently plaintiffs filed a rule to rank encumbrances.
At a hearing on the rule, Michael A. Kievit, who lives directly across the street from the subject property, testified that since January of 1979 he had gone through the house a minimum of once a week, checking on construction. He placed the time of the last delivery of materials to the site in August of 1979 and the time of the last work done at the site around the middle of October of 1979. He also testified that at the time of the hearing the house was only partly finished, not yet fit for habitation, and his testimony in these regards was uncontradicted.
Willard A. Eastin, assistant treasurer of Bernard, stated that he delivered materials to the construction site from August 7 through August 15, of 1979. He also testified that he met with Mark Falgoust, Rudy Brown and several other gentlemen on November 12, 1979, and was given the impression by Brown that he was going to subsidize Falgoust. He said he was asked to release the liens he had filed on other properties of Falgoust’s and not to file any other liens. Eastin said he also spoke to someone in Brown’s office on December 28, 1979, at which time he was given further assurance that papers were being drawn up by Brown’s attorney to give Bernard a guarantee, in order that the existing liens could be released, but that on January 18, 1980 he was told by a person in Brown’s office that he did not know what was happening.
Falgoust testified that he stopped construction on the project around August of 1979 because he did not have the money to complete it. He also said that he borrowed $50,000 from the Stanleys in October of 1979 to finish the house, but admitted that none of the money was actually applied to the construction job in Chateau Estates, but was diverted to other projects in another parish. He stated that at the time of the meeting in November of 1979, with Eastin *1242 and Brown, it was his intent to pay the Stanleys back the $50,000 and complete the house “if there was any way possible to do it.” He admitted that about a week before the February, 1980 foreclosure he also attempted to borrow $50,000 from his father-in-law to pay back the Stanleys.
LSA-R.S. 9:4812 provides in part:
“When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. * * * ”
The above statute only addresses itself to situations where the work of construction has been completed. In the present case the owner did not complete the construction and it becomes material to this case to decide therefore when, if ever, the project was abandoned by him and the result of that abandonment under the law and jurisprudence. In addressing itself to that issue, this court stated in the case of First Wis. Nat. Bank of Milwaukee v. Novem, 349 So.2d 370, 374 (La.App. 4th Cir. 1977):
“Before an abandonment date can be fixed on an incomplete construction project, there should be some outward manifestation of the owner’s intent to give up the project. In Singer Lumber Co. v. King, 45 So.2d 567 (La.App.Orl. 1950), the court discussed this problem and its resolution is apposite here. We quote:
‘We are, however, not concerned with the question of when to commence the sixty-day period when the work is completed. Our problem is when to commence the sixty-day period when the work is never completed and the job is abandoned. The District Judge decided that even if it should be properly held that where there is an actual abandonment and the owner decides not to have the work continued, the sixty-day period commences at the time the owner so decides, nevertheless the lien filed by the plaintiff here was not filed too late because long after the discontinuance of the actual work on the project and, in fact, until well within the period of sixty days before the lien was filed, the owners had not abandoned the project and were still hoping to be able to have the contractor recommence operations.
‘We are not at all certain as to when the sixty-day period should commence when there is an actual definite abandonment of the job. We find it difficult to persuade ourselves that in such a case the beginning of the sixty-day period may be fixed by any mental determination of the owner. The statute, as interpreted by the Supreme Court, declares that where there is a contract, the materialmen and the laborers and others shall have sixty days from the acceptance of the work within which to file their liens, and that where there is no contract, they shall have sixty days from the completion of the work. A prospective lienor, therefore, need only watch the job to see when the work is completed since he knows that after it is completed he will still have sixty days within which to record *1243 his lien. So long as it is not completed, he knows that he still has ample time. How can he determine when the owner has agreed to an abandonment? How can he know that the time for the filing of his lien is running out? He will see that the work, in its incomplete state, is still unfinished and yet when he records his claim he will be told that more than sixty days before that the owner decided that he would go no further with the work and that, therefore, he has lost his lien.
‘Still if we assume that such result may be accomplished by the mere mental determination of the owner that the work is abandoned, we must nevertheless agree with our brother of the District Court that at the time this lien was filed there had not expired sixty days from the time at which the defendants still hoped to be able to persuade the contractor to proceed with the work. * * *’ 45 So.2d at 570.”
Both in First Wis. Nat. Bank of Milwaukee, supra, and Singer Lumber Co. v. King, 45 So.2d 567 (La.App.Orl.1950), the appellate courts affirmed a district court decision based on an apparent factual finding of the trial court judge that the mental determination of the owners was such that they did not “abandon” the project until some point less than 60 days prior to the filing of subject liens. In the present case, however, the trial court judge made a finding of fact, as part of his judgment, that Falgoust “abandoned” the project on August 15, 1979, and this court cannot find that manifest error that would be required for us to reverse such a finding on his part. Even if we assume that abandonment should have been the middle of October, the lien would still have been filed more than the required 60 days.
Falgoust’s testimony that he attempted to borrow money from his father-in-law as late as the week before the foreclosure was totally uncorroborated, and it was within the discretion of the trial court judge to disregard this allegation. Moreover, although Falgoust borrowed $50,000 from the Stanleys in October of 1979, this money was not used in furtherance of construction of the subject house but was diverted to other ongoing construction projects of the defendant, leaving the district court free to conclude that this act on Falgoust’s part did not indicate any intent not to abandon construction at the site in Chateau Estates. Similarly, the negotiations that went on between Bernard and Falgoust had as much, if not more, to do with other liens that Bernard had on properties belonging to Falgoust, and, once again, does not necessarily lead us to conclude that he did not intend to abandon the project in August of 1979, at which time Falgoust admitted he stopped construction on the home.
In making a finding of a mental determination of a witness or party to a suit, the personal observations of the district court judge are of great importance and, as noted above, this court does not find that his findings of fact in the present case are clearly wrong.
For the reasons assigned, the trial court decision is affirmed.

AFFIRMED.