I .WHIPPLE, J.
In this appeal, plaintiff, a supplier of materials, challenges the trial court’s judgment, granting the motion for summary judgment of two defendants, the owner and general contractor of a construction project, and dismissing plaintiffs claims against those defendants on the basis that plaintiff had not timely filed its material-man’s lien and, thus, had not preserved its claim or privilege against those defendants. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Nu-Lite Electrical Wholesalers, LLC, supplied materials to Pickering Electric, Inc. (Pickering) for a construction project in Fourchon, Louisiana. Halliburton Energy Services, Inc. (Halliburton) was the owner of the project; Alfred Pal-ma, Inc. (Palma) was the contractor; and Pickering, to whom Nu-Lite supplied materials, was the electrical subcontractor.
Nu-Lite supplied materials to Pickering for the Fourchon project from September of 1999 through November 30, 1999. *661 Meanwhile, Palma was experiencing difficulties with Pickering performing its work on schedule. Thus, Palma hired another electrical subcontractor, Volute, Inc. (Volute), to assist Pickering in performing the work. By the end of November 1999, Pickering stopped coming to the job site, and Volute completed the electrical work on the Fourehon project.
On March 24, 2000, Nu-Lite filed a Statement of Claim or Privilege under the Louisiana Private Works Act, LSA-R.S. 9:4801 et seq., with the Clerk of Court for Lafourche Parish, contending it was owed $27,841.03 for materials furnished to Pickering on the Fourehon project. On July 20, 2000, Nu-Lite filed the instant suit against Palma, Halliburton, Pickering and Donald Pickering, seeking to enforce its materialman’s lien and to recover |3the sums allegedly due. Palma and Halliburton responded by filing a motion for summary judgment, contending that Nu-Lite’s claims against them should be dismissed as a matter of law, because its materialman’s lien was not timely filed.
Following a hearing on the motion, the trial court, citing Clegg Concrete, Incorporated v. Kel-Bar, Inc., 393 So.2d 178 (La.App. 1st Cir.1980), unit denied, 398 So.2d 531 (La.1981), concluded that the lien in the instant case had not been timely filed in that it was not “filed within 60 days after the last work performed” (presumably meaning the last work performed by Pickering, the electrical subcontractor to whom Nu-Lite supplied materials for use on the project). Accordingly, the trial court rendered judgment granting Palma and Halliburton’s motion for summary judgment and dismissing Nu-Lite’s claims against these defendants. Nu-Lite appeals.
SUMMARY JUDGMENT
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Pursuant to LSA-C.C.P. art. 966(C)(2), if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be ^granted. Keller v. Case, 99-0424, p. 3 (La.App. 1st Cir.3/31/00), 757 So.2d 920, 922, writ denied, 2000-1874 (La.9/29/00), 770 So.2d 354.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Keller, 99-0424 at p. 4, 757 So.2d at 922.
DISCUSSION
On appeal, Nu-Lite challenges the trial court’s ruling, contending that the commencement of the lien-filing period due to abandonment applies only when the entire construction project is abandoned by the owner, not when a single subcontractor fails to perform under its subcontract. Thus, Nu-Lite argues, it had sixty days from completion of the project to file its *662 lien, rather than sixty days from Pickering’s abandonment of or default on its subcontract, and, consequently, its lien was timely filed.
The Louisiana Private Works Act, LSA-R.S. 9:4801, et seq., creates a claim in favor of materialmen of a subcontractor against the owner and contractor and a privilege on the immovable on which the work is performed to secure payment of the movables sold that become component parts of the immovable or that are consumed on the work site. LSA-R.S. 9:4802(A)(3) & (B). To preserve the claim or privilege granted by LSA-R.S. 9:4802, where, as here, notice of the contract is not filed, a materialman shall file a statement of claim or privilege within sixty days after: (1) the filing of a notice of termination of the work; or (2) the substantial completion or abandonment of the work, if a notice of termination is not filed. LSA-R.S. |k9:4822(C)(2). The materialman’s claim or privilege is extinguished if not preserved in the manner prescribed in LSA-R.S. 9:4822. Jimco, Inc. v. Paving Contractors, Inc., 546 So.2d 881, 883 (La.App. 1st Cir. 1989).
Thus, the legal issue presented herein is whether the sixty-day period for filing a statement of claim or privilege by a mate-rialman commences upon the abandonment of work by the subcontractor to whom the materialman furnished materials or whether the “abandonment of work” referred to in LSA-R.S. 9:4822 applies only to abandonment of the entire project by the owner or general contractor.
With regard to “abandonment,” LSA-R.S. 9:4822(1) provides that “[a] work is abandoned by the owner if he terminates the work and notifies persons engaged in its performance that he no longer desires to continue it or he otherwise objectively and in good faith manifests the abandonment or discontinuance of the project.” (Emphasis added). However, the statute is silent as to abandonment of the work by a contractor or subcontractor.
In Clegg Concrete, Incorporated, this court held that where one contractor defaults on his job causing an interruption in the project and another contractor is later hired by the owner, materialmen and laborers for the first contractor must file their liens within sixty days of the first contractor’s default. Clegg Concrete, Incorporated, 393 So.2d at 179-180. In crafting this rule, the court observed that other courts had held that in cases in which the work is not completed, the time period for filing a hen did not commence to run until the owner abandoned his hope of completing the structure. Noting the absurdity of this subjective test of when an owner had abandoned his “hope of completion,” the court instead relied upon the objective measure of when the interruption in the work (due to the contractor’s default) actually occurred. Clegg Concrete, Incorporated, 393 | BSo.2d at 179-180. Thus, this court applied the concept of abandonment where a contractor defaulted on his obligation to complete the work and, thus, caused an interruption in the work. Clegg Concrete, Incorporated, 393 So.2d at 179-180. Nonetheless, Nu-Lite argues that a subcontractor’s default on its subcontract or on its portion of the work does not equate to “abandonment of the work” as contemplated in the Private Works Act. We agree.
As Nu-Lite notes, a “work” is defined in LSA-R.S. 9:4808 as “a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts.” (Emphasis added). Thus, as statutorily defined, a work constitutes the entire continuous project, and not one portion of the project. Accordingly, reading the various *663 sections of the Louisiana Private Works Act as a whole, it follows that “abandonment of the work” as contemplated by LSA-R.S. 9:4822(0(2) for purposes of commencement of the sixty-day lien filing period refers to abandonment of the entire single, continuous project.
Moreover, we note that in Jimco, Inc., this court, in addressing the issue of abandonment of the work, cited with approval T. Harrell, Developments in the Law, 1981-1982, Security Devices, 43 La. L.Rev. 574, 575 (1982)(emphasis added), wherein the writer stated that “where an owner engaged in constructing an improvement on the land, either directly or through a contractor, ceases all activity for some extended period, it behooves those supplying material or labor to the job to ascertain the nature of the stoppage.” See Jimco, Inc., 546 So.2d at 884-885.
Similarly, in Jonesboro State Bank v. Tucker, 381 So.2d 578, 581 (La.App. 2nd Cir.l980)(emphasis added), the Second Circuit Court of ^Appeal deemed “any unexplained and complete cessation of all work” on a construction project to be a manifestation of intent on the owner’s part to abandon the project and was sufficient to put a furnisher of material on notice that the sixty-day period for filing his lien may have begun.
The undisputed facts herein demonstrate that beginning in November of 1999, Volute began working at the jobsite with Pickering to assist Pickering in performing the electrical subcontract work in a more timely fashion. Moreover, after Pickering left the jobsite at the end of November 1999, Volute continued to perform the electrical portion of the work and, as evidenced by invoices in the record, was present at the jobsite at least until February 19, 2000. Thus, Nu-Lite’s statement of claim or privilege, filed on March 24, 2000, was filed within thirty-four days of Volute’s performance of work at the jobsite. Palma and Halliburton have offered no evidence to indicate that no work was being performed on the project for sixty days prior to Nu-Lite’s filing of its statement of claim or privilege on March 24, 2000.
Accordingly, we conclude that Palma and Halliburton, as the proponents of the motion for summary judgment, failed to establish the absence of factual support for one of the elements of Nu-Lite’s claim, inasmuch as work was performed on the project within sixty days prior to Nu-Lite’s filing of its statement of claim or privilege. Consequently, the burden never shifted to Nu-Lite to produce factual support sufficient to establish that it would be able to satisfy its evidentiary burden at trial. See LSA-C.C.P. art. 966(C)(2).
Thus, we conclude that the trial court erred when it determined that Nu-Lite’s statement of claim or privilege was not timely filed and that, as a |smatter of law, Palma and Halliburton were entitled to judgment in their favor dismissing Nu-Lite’s claims against them.[1]
*664 CONCLUSION
For the above and foregoing reasons, the January 31, 2003 judgment dismissing Nu-Lite’s claims against Alfred Palma, Inc. and Halliburton Energy Services, Inc. is reversed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against Alfred Palma, Inc. and Halliburton Energy Services, Inc.
REVERSED AND REMANDED.
KUHN, J., concurs and assigns reasons.

. In their brief to this court, Palma and Halliburton assert that the judgment as to Halliburton is final, arguing that Nu-Lite did not appeal the dismissal of Halliburton. The trial court signed one judgment on January 31, 2003, dismissing Nu-Lite’s claims as to both Palma and Halliburton, and in its motion for appeal, Nu-Lite requested an appeal from the January 31, 2003 judgment. Apparently because Nu-Lite stated in its motion for appeal that the January 31, 2003 judgment ”grant[ed] the Motion for Summary Judgment filed by Alfred Palma, Incorporated,” but did not mention in the motion for appeal that the motion for summary judgment was a joint motion of both Palma and Halliburton, these defendants now claim that Nu-Lite did not appeal the dismissal of Halliburton. This argument clearly lacks merit where Nu-Lite timely perfected an appeal of the January 31, 2003 judgment that dismissed its claims as to both Palma and Halliburton.